OPINION
Douglas Scott Whitson was indicted on January 11, 2001 on charges of carrying a concealed weapon and possession of cocaine with a firearm specification. He entered a plea of "not guilty" at arraignment and counsel was appointed to represent him.
Counsel eventually filed a motion to suppress the physical evidence, specifically the firearm and the cocaine. An evidentiary hearing on the motion was held on May 14, 2001, and the motion was overruled.
A jury trial was conducted in June of 2001. Mr. Whitson was convicted of carrying a concealed weapon but acquitted of the cocaine charge.
New counsel has been appointed to represent Mr. Whitson on appeal. A single assignment of error is presented for review:
 The trial court erred by overruling Appellant's motion to suppress the results of an illegal and unconstitutional search and seizure of his person.
Three witnesses testified at the evidentiary hearing on the motion to suppress. The first witness was Gary Householder, a sergeant with the City of Columbus, Division of Police. Sergeant Householder testified that he had been dispatched on November 25, 2000 to the scene of a robbery at an Easy Mart at Shanley and Karl Roads in north Columbus. The suspects in the robbery were described as "[t]hree male blacks wearing dark clothing, coats, some of them with hats." (Tr. 6.)
Sergeant Householder drove around the parking lot of Northland Shopping Center which was nearby. Because the time was near midnight, no stores in the mall were still open. A chain link fence separated the area where the Easy Mart was located from the mall parking lot.
Sergeant Householder encountered Douglas Scott Whitson who was wearing a blue coat and dark pants. Mr. Whitson had on a head covering. Mr. Whitson is an African-American male. Sergeant Householder testified that he believed Mr. Whitson fit the description of the robbers.
Sergeant Householder recalled Mr. Whitson as having his hands in his pockets and glancing around at the marked police crusiers in the area. Sergeant Householder also testified that Mr. Whitson "picked up his pace a little bit."
Sergeant Householder further testified:
 I approached the individual from behind and stopped my car, exited my vehicle, stood behind the open driver's side door and told the individual that was walking away from me at that time I wished to speak to him.
* * *
 He was about, like I said, 25 yards ahead of me. He started to act a little nervous, glancing back and forth over his shoulder. He turned towards me. I asked the individual to take his hands out of his pockets at which he complied.
* * *
 The individual started to seem agitated, saying I didn't do anything. I didn't do anything. He kept repeating I haven't done anything. Took a couple steps backwards back from me, started to place his hands back in his pockets. I instructed him to keep his hands out of his pockets again.
* * *
 This happened on a couple of occasions. Once his back was to me, I told the individual to keep his hands out of his pockets and place them on top of his head. Again, he became agitated saying I didn't do anything, kept glancing over his right shoulder, like, turning his left side from me.
 I stepped out from behind the car with the door, started to approach the individual. When he started to make his turn and glance at me, I decided to keep my cover and stay there in that position. That happened on two occasions. [Tr. 9-12.]
After two other officers arrived as back-up, Sergeant Householder proceeded:
 I reached up and grabbed a hold of the individual. His hands were on the back of his head. Grabbed him by his hands with my right hand and started to do a pat down on his left side. First I wanted to check that left coat pocket area. [Tr. 12.]
The weapon taken from Mr. Whitson was a handgun.
Before the search, Sergeant Householder had asked Mr. Whitson where he was coming from and Mr. Whitson had replied "from the store." (Tr. 21.)
The second witness to testify at the motion to suppress hearing was Christopher P. Boyle, an officer with the Columbus Division of Police. Officer Boyle testified he "[s]aw Sergeant Householder was conducting a Terry pat down of an individual when we arrived." (Tr. 25.) After Sergeant Householder did the pat down, "Sergeant Householder stated something to the effect that there was something in the gentleman's left pocket that he felt could possibly be a weapon." (Tr. 25.)
Sergeant Householder then placed Mr. Whitson in a prone position, and the weapon was removed from Mr. Whitson's pocket.
On cross-examination, Officer Boyle was asked what he recalled about the description of the robbery suspects which had been broadcast. All Officer Boyle recalled was a white bandana being worn by one suspect and a "blue navy jacket" being worn by one.
Douglas Scott Whitson also testified. He stated that he was "coming from the C-Note Lounge off of Karl" at about 11:50 p.m. when he encountered Sergeant Householder. Mr. Whitson testified he was walking towards his mother's house at 2103 Eaton Avenue, about two or three streets away. Mr. Whitson indicated that he was wearing white Adidas shoes, black slacks and a royal blue Los Angeles Dodgers jacket with large white lettering across the chest.
Mr. Whitson indicated that he had his hands in his pockets because it was snowing. He took his hands out of his pockets at the Sergeant's request. Mr. Whitson recalls Sergeant Householder was asking for permission to search Mr. Whitson, which Mr. Whitson refused. After the refusal, Sergeant Householder asked for identification. Then, Mr. Whitson put a hand back in his pocket.
The critical question is whether the officers had the right to conduct a stop and frisk of Mr. Whitson under the circumstances. Clearly, the officers did not have probable cause to arrest Mr. Whitson at the time they approached him, and they did not have probable cause to arrest him until the handgun was found in his pocket.
The seminal case which established the right of police officers to conduct an investigative stop, commonly called a "stop and frisk," is the case of Terry v. Ohio (1968), 392 U.S. 1. In the Terry case, the Supreme Court of the United States weighed the competing interests of individual privacy and effective law enforcement in the context of theFourth Amendment to the United States Constitution. The Supreme Court held at page 21-22:
 * * * [I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment or the seizure of the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?
The standards set forth in Terry have been used for over thirty years now with no significant modification. Our duty as an appellate court is to apply the standards to Mr. Whitson's case.
On November 25, 2000, police were looking for a group of three African-American males. Mr. Whitson was walking alone.
Police had very little in the way of a description of the robbers, other than their number and their race. Most people in Ohio wear dark clothing and coats in late November. Some males wear hats and some do not. The information provided to Sergeant Householder was of little or no use in determining if an individual African-American male was involved in the robbery. In short, Sergeant Householder did not have "specific and articulable facts" to justify frisking Mr. Whitson.
Sergeant Householder had the right to approach Mr. Whitson and ask him questions. Sergeant Householder even had the right to ask permission to search Mr. Whitson. However, Mr. Whitson had the right to refuse to answer the questions and to refuse the permission to search.
Since the stop and frisk of Mr. Whitson was not supported by specific and articulable facts, the stop was a violation of Mr. Whitson's right to freedom from unreasonable searches and seizures under theFourth Amendment to the United States Constitution. The motion to suppress should have been sustained. Since the trial court did not sustain the motion, the trial court erred.
We, therefore, sustain the sole assignment of error. We reverse the judgment and sentence of the trial court. We remand the case with instructions to sustain the motion to suppress and to conduct such further proceedings as are appropriate under the circumstances.
Judgment reversed and cause remanded with instructions.
BOWMAN and BROWN, JJ., concur.